IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JENERRAL REED AMBROSE, #212801, )
)
Plaintiff,                    )
)
v.                            )        CASE NO. 2:06-CV-929-MHT
)                [WO]
)
SHERIFF RUSSELL THOMAS, et al., )
)
Defendants.                   )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

This case is pending before the court on a 42 U.S.C. § 1983 complaint filed by
Jenerral Reed Ambrose ["Ambrose"], a former state inmate, in which he alleges
constitutional violations related to his previous confinement in the Pike County Jail.  In the
complaint, as amended, Ambrose alleges that the defendants (i) failed to provide him
medical treatment for an ear infection, (ii) did not adequately supervise inmates, (iii)
deprived him of a nutritionally adequate diet, and (iv) subjected him to unconstitutional
living conditions.  Ambrose names Russell Thomas, the sheriff of Pike County, Alabama,
Olivia Pearson, the administrator for the Pike County Jail, and Doug Wheeler, a captain
with the Pike County Sheriff's Department, as defendants in this cause of action.  Ambrose
seeks declaratory relief and monetary damages for the alleged violations of his
constitutional rights.

The defendants filed a special report and relevant supporting evidentiary materials addressing Ambrose's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to construe this report as a motion for summary judgment. *Order of February 20, 2007 - Court Doc. No. 24*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response in opposition to the motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary

---

[1]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only." Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine issue of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial."). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to

> sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Ambrose is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id.* at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own

conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003)

(citation omitted).  To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Ambrose fails to demonstrate a requisite genuine issue of material fact in order

6

to preclude summary judgment.  *Matsushita*, *supra*.

## III.  DISCUSSION[2]

## A.  Absolute Immunity

To the extent that Ambrose sues the defendants in their official capacities, they are immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  Under all facets of Alabama law, a county sheriff and his staff act as state officers "when supervising inmates and otherwise operating the county jails."  *Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112 (designates county sheriff as member of State's executive department); *see also Parker v. Amerson*, 519 So.2d 442 (Ala. 1987) (county sheriff is executive officer of the State).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the

---

[2]On September 6, 2006, Ambrose entered the Pike County Jail on a fugitive warrant arising from his violation of parole on a prior state felony conviction. Thus, it appears that the actions about which Ambrose complains relate to incidents which occurred during his confinement as a convicted prisoner. Nevertheless, regardless of his status, the applicable standard of review remains the same. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861 (1979); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citations omitted) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.... However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1492 (1986) (For analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.); *Tittle v. Jefferson County Commission*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state officials entitled to Eleventh Amendment immunity when sued in their official capacities. Thus, the defendants are entitled to absolute immunity from the plaintiff's claims for monetary damages asserted against them in their official capacities.

### B. Denial of Medical Treatment

### 1. Requests to Jailers

Ambrose alleges that he "contracted an ear infection after arriving at the Pike County Jail ... [and] complained to jailers about his ear infection but was ignored by jailers." *Plaintiff's Second Amendment to the Complaint - Court Doc. No. 18* at 2; *Plaintiff's First Amendment to the Complaint - Court Doc. No. 13* at 2 (same). Ambrose does not identify any jailer to whom he made a request for medical treatment.[3]

---

[3] Although, in his response to the defendants' report, Ambrose makes the conclusory allegation that he advised defendant Pearson of his infection and requested medical treatment, he presents no objective evidence to support this assertion. Moreover, the only objective evidence before the court demonstrates Ambrose did not file any written request for medical treatment, nor did he approach defendant Pearson with any verbal request for treatment

The law is well settled that defendants "can have no respondeat superior [or vicarious] liability for a section 1983 claim." *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001); *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Florida*, 402 F.3d 1092, 1115-1116 (11th Cir. 2005) (In establishing liability under § 1983, a prisoner cannot rely on theories of vicarious liability or respondeat superior.). Thus, defendants Thomas, Pearson and Wheeler are liable for challenged actions of other officers only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions ... and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation omitted).

In his complaint, as amended, Ambrose does not allege that defendants Thomas, Pearson or Wheeler personally denied his requests for medical treatment and the defendants deny any personal involvement with the alleged denials. *Defendants' Attachment 1 to*

*Special Report/Affidavit of Russell Thomas - Court Doc. No. 23* at 8 ("I did not have any personal involvement with Ambrose during his incarceration.... All policies and procedures concerning inmate medical needs were in place and would have been followed if requested or needed.  Our jail [staff] is not aware of any complaints made by ... Ambrose during his incarceration and, to my knowledge and belief, Ambrose suffered no physical injury [or malady] while incarcerated in the Pike County Jail."); *Defendants' Attachment 2 to Special Report/Affidavit of Doug Wheeler - Court Doc. No. 23* at 10-11 ("I did not have any personal involvement with Mr. Ambrose during his incarceration at the Pike County Jail.... [B]ased upon my personal investigation, Mr. Ambrose was not denied any medical treatment nor did he receive any form of personal injury during the time he was in the Pike County Jail....  Jail policies concerning inmate medical needs are strictly adhered to and there is no evidence to indicate that Mr. Ambrose was denied any form of medical treatment that was needed or requested....  [The instant] complaint ... was the first notice to me, the jail staff or the Sheriff that Ambrose had a complaint of any nature during the time he was incarcerated in the Pike County Jail."); *Defendants' Attachment 3 to Special Report/Affidavit of Olivia Pearson - Court Doc. No. 23* at 12-13 ("Mr. Ambrose was not denied medical treatment at any time while in the Pike County Jail....  [A]t no time did our staff (jailers) neglect Ambrose's medical needs.  If there had been any problem with Ambrose, our jailers would have done their job by logging the complaint, reporting it to a supervisor, and/or giving a Request Form which Ambrose would have completed and

returned to the jailer. The Request Form also has a place on which to state any grievance....

Unless an inmate's request is an emergency, then an appointment will be made with the jail

doctor and the inmate will be transported at the time of the appointment.  If the request is

an emergency, then paramedics will be called and, if necessary, the inmate will be

transported to the Emergency Room....  [Neither I nor any other member of the jail staff]

had any recollection of any complaints or requests for medical attention from Ambrose -

formally or verbally....  Ambrose did not ask for any medication during his incarceration.").

Thus, the only evidence before the court demonstrates that the named defendants did not

personally participate in the alleged denial of medical treatment.

Based on the foregoing, defendants Thomas, Pearson and Wheeler may be held

liable in this § 1983 action if their actions bear a causal relationship to the purported

violation of Ambrose's constitutional rights.  To establish the requisite causal connection

and therefore avoid entry of summary judgment in favor of these defendants, Ambrose

must present sufficient evidence of either "a history of widespread abuse [that] put[] [the

defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to

do so...." or "a ... custom or policy [that] result[ed] in deliberate indifference to

constitutional rights, or ... facts [that] support an inference that [Thomas, Pearson and

Wheeler as supervisory officials] directed the subordinates to act unlawfully, or knew that

the subordinates would act unlawfully and failed to stop them from doing so."  *Cottone*,

326 F.3d at 1360 (internal punctuation and citations omitted).  A thorough review of the

11

pleadings and evidentiary materials submitted in this case demonstrates that Ambrose has failed to meet this burden.

(i) <u>Causal Relationship Test</u>.  The record before the court contains no evidence to support an inference that Thomas, Pearson or Wheeler directed jail personnel to act unlawfully or knew that jail personnel would act unlawfully and failed to stop such actions. Ambrose has likewise failed to show a history of widespread abuse at the Pike County Jail which put any of the aforementioned defendants on notice of an alleged denial of medical treatment to inmates confined in the jail. Consequently, neither method of establishing liability under the causal relationship test provides a basis for liability under § 1983.  The court will therefore address whether a custom or policy of the Pike County Jail resulted in a violation of Ambrose's right to medical treatment.

(ii) <u>Applicable Jail Policy</u>.  The policy of the Pike County Jail provides an inmate "access to appropriate health care services ... in order to provide for [the inmate's] physical and emotional well-being."  *Defendants' Exhibit 1 - Court Doc. No. 23-2* at 4. The affidavits of the defendants establish that, to their knowledge, jail staff followed this policy. The procedure for obtaining medical treatment while confined in the Pike County Jail is as follows:

> 1.  Inmates desiring medical services will immediately let the jail staff on duty know of their request.  The Jail Administrator will make arrangements for the inmate to receive medical services.
>
> 2.  If the request is stated to be an emergency and in the absence of the Jail

12

Administrator or Captains then the jailer on duty will make arrangements for emergency treatment.

3.  If an emergency is stated by the inmate and the inmate appears to be in distress or discomfort of any kind, the jailer on duty will make arrangements for the inmate to be transferred as soon as possible to the emergency room of the Edge Regional Medical Center in Troy, Alabama....

*Defendants' Exhibit 1 - Court Doc. No. 23-2* at 4; *see also Defendants' Attachment 3 to Special Report/Affidavit of Olivia Pearson - Court Doc. No. 23* at 12-14.

There is nothing before the court to indicate that any policy of the Pike County Jail resulted in a denial of medical treatment.  *Cf. Employment Div. v. Smith,* 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); *Turner v. Safely,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Furthermore, the record is devoid of evidence that jail personnel implemented the applicable policy to infringe upon this inmate's constitutional rights, *see, e.g., Sasnett v. Litscher,* 197 F.3d 290, 293 (7th Cir. 1999); rather, the objective evidence before the court demonstrates jail officials implemented the policy regarding inmate medical treatment to guarantee protection of these rights.  Summary judgment is therefore due to be granted in favor of the defendants on Ambrose's deliberate indifference claim.

### 2.  Allegation in Response to Report - Request Directed to Olivia Pearson

As previously noted, Ambrose, in response to the defendants' report, alleges that he requested medical treatment for his ear infection from defendant Pearson and she denied his requests.  *Plaintiff's Affidavit in Support of April 11, 2007 Response - Court Doc. No.*

*33-5* at 1-2.  Ambrose also maintains that the Pike County Jail "had no medical provider at all ... [and] no medical sick call procedure ... to treat inmates."  *Id*. at 2. Defendant Pearson denies these allegations and the objective evidentiary materials before the court, including the records and policies of the Pike County Jail, support her position. Specifically, Pearson maintains that Ambrose never sought medical treatment or medication from her regarding any medical condition during his incarceration at the Pike County Jail and also reiterates the jail's policy governing the provision of medical care to inmates. *Affidavit of Olivia Pearson in Response to Plaintiff's April 11, 2007 Response - Court Doc. No 37-5* at 1-2 ("There are no documents that reflect a response [by jail personnel] to Ambrose's medical needs because Ambrose never reported verbally or in writing to anyone that he was requesting or needing medical attention....  Ambrose is absolutely giving false statements about the lack of medical care in this case.  Our medical provider is Dr. Mickey Dichiara and Edge Regional Medical Center.  Whenever an inmate is in need of medical care, an appointment is made or, if it is an emergency, he is taken to Edge Regional Medical Center for appropriate care.").

To prevail on a constitutional claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that those responsible for providing the treatment acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000);

*McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986).  Specifically, jail personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989).  When seeking relief based on deliberate indifference of responsible officials, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."

*Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, ... the Supreme Court has ... emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop*, 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). Moreover, "whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact that prison inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981)

16

(prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2001). Thus, for Ambrose to survive summary judgment on his deliberate indifference claim against defendant Pearson he is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

The medical and jail records filed in this case demonstrate that during Ambrose's confinement in the Pike County Jail he did not seek medical treatment for an ear infection. These records further establish that while in the Pike County Jail Ambrose had access to medical treatment via the jail's medical policy but failed to request treatment in accordance with the policy. Ambrose has failed to present significantly probative evidence indicating that defendant Pearson had knowledge of a substantial risk of serious harm to his health and with this knowledge consciously disregarded such risk. Summary judgment is therefore due

to be granted in favor of defendant Pearson on this claim.

## C. Challenges to Conditions of Confinement

Ambrose complains that during his confinement in the Pike County Jail the defendants (i) failed to supervise inmates properly, (ii) denied him a nutritionally adequate diet, (iii) failed to provide adequate lighting, and (iv) refused to allow him appropriate time out of his cell.  He also alleges the jail was in a state of disrepair with "paint peeling from the ceiling, filthy showers and commodes[,] [and] roaches" rampant throughout the facility. *Plaintiff's First Amendment to the Complaint - Court Doc. No. 13* at 4.  The defendants deny a lack of supervision or security in the jail.  Additionally, in response to the plaintiff's claims challenging the physical conditions of confinement, the defendants submit state inspection reports which contradict his claims. *Defendants' Exhibit 2 - Court Doc. No. 23-5* at 2-4; *Defendants' Exhibit 4 - Court Doc. No. 37-4* at 1-2.  These reports demonstrate the defendants maintained the jail in a satisfactory state of repair, provided adequate plumbing facilities and contracted for routine pest control.  The reports also establish that defendants provided adequate food service to the inmates.  Defendant Pearson likewise addresses Ambrose's conditions claims as follows: "Ambrose's claims and this lawsuit are totally unjustified and without merit.  At no time during his incarceration in the Pike County Jail was Mr. Ambrose ... subjected to any unconstitutional conditions, or did he suffer from any mistreatment in any form." *Defendants' Attachment 3 to Special*

18

*Report/Affidavit of Olivia Pearson - Court Doc. No. 23* at 14.

Only those conditions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (19891).[4] "'[T]he Constitution does not mandate comfortable prisons.' *Id.* at 349, 101 S.Ct. at 2400. If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.' *Id.* at 347, 101 S.Ct. at 2399. Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.' *Id.*" *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). A prison official may likewise be held liable under the Eighth Amendment for acting with "'deliberate indifference'" to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan***,** 511 U.S. 825, 828, 114 S.Ct. 1970, 1974 (1994). A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, ... and [that] the official does not respond[] reasonably to the risk'...." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(en banc), *quoting Farmer*, 511 U.S. at 844,

---

[4]The Eighth Amendment applies to the states through the Fourteenth Amendment. *Rhodes,* 452 U.S. at 344-345.

19

114 S.Ct. at 1982-1983.  Thus, in order to survive summary judgment on his claims

challenging the conditions of confinement at the Pike County Jail, Ambrose is "required

to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants'

deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d

1579, 1582 (11th Cir. 1995); *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) ("To

be deliberately indifferent, Defendants must have been 'subjectively aware of the

substantial risk of serious harm in order to have had a "'sufficiently culpable state of

mind.'''" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294,

299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)....  Even assuming the existence of

a serious risk of harm and legal causation, the prison official must be aware of specific facts

from which an inference could be drawn that a substantial risk of serious harm exists-and

the prison official must also 'draw that inference.' *Farmer,* 511 U.S. at 837, 114 S.Ct. at

1979.").

The living conditions within a county jail will constitute cruel and unusual

punishment when the conditions involve or result in "wanton and unnecessary infliction of

pain, [or] ... [are] grossly disproportionate to the severity of the crime warranting

imprisonment." *Rhodes*, 452 U.S. at 347.  "Conditions ... alone or in combination, may

deprive inmates of the minimal civilized measure of life's necessities.  Such conditions

could be cruel and unusual under the contemporary standard of decency ....  But conditions

that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Id.* at 347.  To determine whether conditions of confinement constitute cruel and unusual punishment, the court must look to the effect the condition has upon the inmate.  *Id.* at 366.  In a case involving conditions of confinement generally or several different conditions, the court should consider whether the claims together amount to conditions which fall below constitutional standards.  *Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied Hamm v. De Kalb County*, 475 U.S. 1096, 106 S.Ct. 1492, 89 L. Ed. 2d 894 (1986); *see also Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

Despite his contentions regarding the conditions of confinement at the Pike County Jail, Ambrose does not establish that these conditions denied him the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain.  *Wilson*, 501 U.S. at 298-299; *Rhodes*, 452 U.S. at 347.  Furthermore, Ambrose fails to demonstrate any deliberate indifference or reckless disregard by the named defendants with respect to his health or safety.  Specifically, Ambrose fails to identify any particular incident or condition of which defendants Thomas, Pearson and Wheeler were aware from which an inference could be drawn that a substantial risk of serious harm existed.  The record is also devoid of any evidence showing that the defendants drew the requisite inference. Consequently, summary judgment is due to be granted in favor of the defendants on the claims challenging the conditions of confinement in the Pike County Jail.

*McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see also Carter*, 352 F.3d at 1349-1350.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be granted.

2.  Judgment be entered in favor of the defendants.

3.  The costs of this proceeding be taxed against the plaintiff.

4.  This case be dismissed with prejudice.

It is further

ORDERED that  on or before June 4, 2009 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure by a party to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues addressed in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice.

*Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 21st day of May, 2009.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE